UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

=========================================

| | |
|---|---|
| JONATHAN FORTIER, | : |
| | : |
| Plaintiff, | : |
| | : |
| Versus | : |
| | : |
| DUCHESS RESTAURANT OF NORWALK, | : |
| INCORPORATED; DUCHESS WORLDWIDE, | : |
| INC.; MICHAEL BERKOWITZ; GARY LAVIN; | : |
| JOHN DOE; AND MARY ROE, | : |
| | : |
| Defendants | : |

Case No. _____

January 29, 2024

=========================================

## COMPLAINANT FOR UNPAID OVERTIME, UNPAID WAGES, AND RETALIATION, AND DEMAND FOR JURY TRIAL

Plaintiff, **JONATHAN FORTIER** (hereinafter "Mr. Fortier"), through his Counsel, the Law Office of Matthew T. Miklave, PLLC, and for his complaint against the **DUCHESS RESTAURANT OF NORWALK, INCORPORATED** (hereinafter "Duchess Norwalk"); its parent, **DUCHESS WORLDWIDE, INC.** (hereinafter "Duchess Worldwide"); **MICHAEL BERKOWITZ**, an individual who serves as President and Treasurer of Duchess Norwalk; **GARY LAVIN**, Vice-President of Duchess Norwalk and President of Duchess Worldwide; and **JOHN DOE** and **MARY ROE**, individuals responsible for the payment of wages to employees of Duchess Norwalk and whose names are currently unknown but will be learned in discovery

(collectively the "Defendants"), and for his complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      Mr. Fortier alleges that the Defendants violated Federal and Connecticut law by failing and refusing to pay him overtime at the rate of time-and-a-half his regular hourly rate, failing to pay him all wages due, refusing to allow him a day of rest after working excessive consecutive days, retaliating against him for requesting a day of rest, retaliating against him for seeking to take a sick day, and retaliating against him for taking a sick day after he worked an excessive number of consecutive days, regularly working 12 or more hours each day and more than 60 hours each week.  Mr. Fortier seeks payment of unpaid wages, liquidated damages, reinstatement to his former position or front pay in place of reinstatement, consequential damages, punitive damages, prejudgment interest, post-judgment interest, and reasonable attorneys' fees and costs incurred in bringing this action.

## THE PARTIES

2.      Mr. Fortier is a citizen and resident of the United States and the State of Connecticut and resides at 10 Heather Lane, Norwalk, Connecticut.

3.      Duchess Norwalk is a Connecticut domestic corporation with a principal address located at 157 Main Street, Norwalk, Connecticut.

4.      Duchess Worldwide is a Delaware stock corporation authorized to do business in Connecticut with a business address located at 3 Whispering Pines Lane, Shelton, Connecticut.

5.      Upon information and belief formed after diligent inquiry, Duchess Worldwide is the parent corporation of Duchess of Norwalk and other entities that jointly operate twelve (12) "Duchess-Style" quick service restaurants located in Southern Connecticut.  These Duchess-Style restaurants operate as a single business enterprise, a single employer, joint employer and/or alter ego of Duchess World, as set out more specifically below.

   a. Upon information and belief formed after diligent inquiry, Duchess Worldwide maintains a common website advancing the business interests of Duchess Norwalk and the other 11 Duchess restaurants in Connecticut (hereinafter the "Common Duchess Website"). *See* https://duchessrestaurants.com/ (accessed December 19, 2023).

   b. Upon information and belief formed after diligent inquiry, the Common Duchess Website advertises Duchess Norwalk and the 11 other Duchess Restaurants as being a single entity, with common customers, common menus and prices, common equipment, common standards, and a common operation.

c.  Upon information and belief formed after diligent inquiry, using the Common Duchess Website, customers may order from Duchess Norwalk or any of the other 11 Duchess Restaurants for either pick-up or delivery.

d.  Upon information and belief formed after diligent inquiry, applicants seeking to work at Duchess Norwalk or any of the other 11 Duchess restaurants may apply for employment using the Common Duchess Website and are interviewed and selected based on common criteria and standards.

e.  Upon information and belief formed after diligent inquiry, employees of Duchess Norwalk and the other 11 Duchess restaurants wear common uniforms and hold themselves out to the public as belonging to the same "family" of restaurants.

f.  Upon information and belief formed after diligent inquiry, Duchess Norwalk and the other Duchess Restaurants permit customers to purchase gift cards in various denominations that can be used at Duchess Norwalk or any of the other 11 Duchess locations without limitation.   These gift cards are in all material respects and by outward appearances identical.

g.  Upon information and belief formed after diligent inquiry, employees employed at one of the other 11 Duchess locations have worked at Duchess

Norwalk without having to apply for employment at that location. Thus, while employees may be told they work at a specific location, in practice, a Duchess employee may be assigned to another location based on common business needs.

6.      Based on these factors, and other evidence as may be adduced in discovery, Duchess Worldwide, Duchess Norwalk, and the other 11 Duchess restaurants constitute a single business enterprise, a single employer, a joint employer and/or alter egos, and are jointly and severally liable for the damages and debts of each other.

7.      Michael Berkowitz is a natural person, a resident of the State of Connecticut and the United States, and serves as President and Treasurer of Duchess Norwalk. Upon information and belief formed after diligent inquiry, as Treasurer of Duchess Norwalk, Berkowitz is responsible for the payment of all wages owed to employees.

8.      Defendant Lavin is a natural person, a resident of the State of Connecticut and the United States and serves as Vice-President of Duchess Norwalk and President of Duchess Worldwide. Upon information and belief formed after diligent inquiry, Defendant Lavin as President of Duchess Worldwide is ultimately responsible for the payment of wages owed to employees working at Duchess Norwalk and Duchess World.

9.     Defendant John Doe is a natural person whose identity is presently unknown who was or is responsible for the setting of hours and/or the payment of wages owed to employees working at Duchess Norwalk and Duchess World.

10.     Defendant Mary Roe is a natural person whose identity is presently unknown who was or is responsible for the setting of hours and/or the payment of wages owed to employees working at Duchess Norwalk and Duchess World.

### JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331(a) as it arises under the laws of the United States and specifically the Fair Labor Standards Act, 42 U.S.C. §201 *et seq*.

12.     This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over claims brought under Connecticut State Wage and Hour laws and specifically CGS §§31-71(c) and 31-72, as those claims arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the Constitution of the United States.

13.     This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over Defendant Berkowitz, Defendant Lavin, Defendant Doe and Defendant Roe because the claims against them arise out of a common nucleus of operative facts and they are all located and reside within the jurisdiction of this Court.

14.     Venue in this Court is proper under 28 U.S.C. §1391(b)(1) and (2) because some or all of the defendants reside in this judicial district or a substantial part of the events or omissions occurred in this judicial district.

<h2 align="center">NATURE OF THE CASE</h2>

15.     Defendants hired Mr. Fortier as a clearer in or about November 2021. Defendant paid Mr. Fortier a flat rate of $400.00 per week to clean without regard to the number of hours Mr. Fortier worked.  Mr. Fortier typically worked seven days per week, three hours per day, starting at 3 a.m. and concluding at about 6 a.m. or later.

16.     When Defendants first hired Mr. Fortier, Defendants paid Mr. Fortier in cash.  When Mr. Fortier protested, a manager of Defendants told Mr. Fortier that it had paid Mr. Fortier's wages using the deductions and tax reporting information of a co-worker who shared a room with Mr. Fortier, and asserted that it would be "better" for Mr. Fortier to be paid in this manner as fewer taxes and deductions would be withheld.

17.     Mr. Fortier objected to this manner of payment, however, and in December 2021, Defendants accepted Mr. Fortier's Withholding Certificate and began paying Mr. Fortier by check and later by direct deposit.

18.     Mr. Fortier continued to work cleaning for Defendants until in or about March 2022.  During this period, Mr. Fortier was assigned to work a 3 a.m. to 6 a.m. schedule, seven days per week.

19.     In March 2022, Mr. Fortier sought additional employment opportunities with Defendants.  Defendants agreed to hire Mr. Fortier to do "prep. work" (preparing food for cooking and sale).  Defendants agreed to pay Mr. Fortier minimum wage for this work.  Mr. Fortier generally worked "prep." from 6 a.m. until 3 p.m., seven days per week. Many times, however, Mr. Fortier was required to work past 3 p.m. to accomplish all assigned work.  Mr. Fortier never refused such assignments even though (as detailed below) he had been working at that point more than 12 consecutive hours in a single day.

20.     Even though Mr. Fortier worked "prep." almost full-time, Defendants continued to require Mr. Fortier to perform cleaning work as well.  Thus, beginning in March 2022, Mr. Fortier worked from 3 a.m. to 6 a.m. cleaning, and then worked "prep." from 6 a.m. until generally 3 p.m. or later.  As a result, other than for meal and rest periods, Mr. Fortier worked from 3 a.m. to 3 p.m. and later, seven days per week, generally without a day of rest during the week.

21.     Mr. Fortier performed his cleaning duties and his "prep." duties in the same facility, under the same managers and supervisors, wearing the same uniform and subject to the same terms and conditions of employment, with one exception.  When Mr. Fortier was working prep., he signed in and out of work using a computer-based time system.  When Mr. Fortier worked his cleaning assignment, however, Defendants did not keep track of his work hours, did not have him clock in or out, and upon

information and belief, cannot produce a record of his work hours as required by Federal and Connecticut law.

22.     When Mr. Fortier worked more than 40 hours per week doing "prep." work, Defendants paid him time-and-one-half his minimum wage hourly rate.  However, because Defendants did not keep track of his additional 21 hours or more per week that Mr. Fortier worked as a cleaner, Defendants failed to properly calculate his overtime rate and unlawfully failed to pay him overtime for all hours worked in excess of 40 hours per week.

  a. For example, for the week ending March 24, 2022, Mr. Fortier worked 41.25 hours for "prep" and was paid gross wages of $598.00.  During the same workweek, however, Mr. Fortier worked an additional 21 hours or more performing cleaning work for which Defendants failed to pay overtime. This resulted in an underpayment of wages in two ways.  First, Defendants failed to pay an overtime rate based on all hours worked in excess of 40 hours per week.  Second, Defendants failed to properly include his functionally equivalent hourly wage "cleaning" rate ($19.04 per hour) when calculating his overtime rate.

b. These failures were repeated every workweek from March 2022 through October 2022, for a total of approximately 27 separate violations of Federal and State wage and hour record-keeping laws.

23.    In or about October 2022, at Mr. Fortier's request, Defendants removed cleaning responsibilities from Mr. Fortier's job duties.  Mr. Fortier continued to perform "prep." work, however, and continued to typically work seven days per week.

24.    At some time in the Spring of 2023, Mr. Fortier approached his manager and asked about his overtime pay and questioned whether he was being properly paid. Incredibly, Mr. Fortier's manager told him that only "managers" were paid overtime by Defendants.    This statement shows a deliberate indifference to the Defendants' obligations under federal and state law to pay employees at least minimum wage for all hours worked and time-and-a-half the employee's regular rate of pay for all hours worked in excess of 40 hours per week.

25.    Based upon information and belief formed after diligent inquiry, Defendants' failure to pay Mr. Fortier overtime was willful.  Mr. Fortier is informed and believes that Defendants' Milford location was the target of an investigation by the United States Department of Labor that resulted in the finding of four separate violations of federal law.  *See* Case No. 1883775 (Wage and Hour Division, United States Department of Labor).  *See* https://enforcedata.dol.gov/views/results.php (last accessed January 22,

2024). Thus, Defendants knew or should have known that they were obligated to pay employees as required by law and were recklessly indifferent to their obligations.

26. On or about June 21, 2023, after Mr. Fortier had worked an exceptionally long period without a day of rest, Mr. Fortier sought to take a sick day. Mr. Fortier texted his manager's wife (an accepted method of communicating with his manager) that he would not be in the next day because of illness. Within a short time, Mr. Fortier's manager called him to say if he took a sick day, his manager would find "someone else" to do his prep. job. Mr. Fortier reasonably viewed his manager's statement as a threat to terminate him if he took a sick day. Rather than take a sick day, Mr. Fortier worked as scheduled.

27. Thereafter, in July 2023, Mr. Fortier sought a day off from his grueling seven-day-per-week schedule. When he asked for a day off, Mr. Fortier's manager told him he could not have a single day off but would have to take three and the manager would give those hours to "someone else."

28. Mr. Fortier eventually took a day off from his grueling schedule around July 2023. Almost immediately, Defendants reduced Mr. Fortier's working hours dramatically, thus fulfilling the threat of retaliation previously expressed. Before he sought to take a day-of-rest in 2023, Mr. Fortier averaged 48.6 hours of work per week. After Mr. Fortier requested and took a day off from his seven-day-per-week schedule,

Mr. Fortier averaged 23.8 hours of work per week.  Defendants reduced Mr. Fortier 's assigned work hours in retaliation for Mr. Fortier exercising his right to a "day of rest" under Connecticut Law, CGS §53-303e.

29.    After Defendants reduced Mr. Fortier's work hours, Mr. Fortier requested his manager provide him with copies of his paystubs.  Mr. Fortier made this request because he came to believe Defendants were not properly compensating him for all hours worked and were not paying him overtime as required by Connecticut law.

30.    Defendants, however, were not able to provide Mr. Fortier with a copy of his pay stubs or paychecks.  Rather, Defendants provided Mr. Fortier with a partial summary of some of his working hours.

31.    Subsequent to Mr. Fortier 's request for a day-of-rest, his request for a sick day, his questioning Defendants about overtime pay, and requesting copies of this pay records, Defendants effectively terminated Mr. Fortier's employment.  Defendants' manager texted Mr. Fortier to claim that a co-worker of Mr. Fortier said that Mr. Fortier would not be coming to work and that the manager had "asked the other guy to come and replace [Mr. Fortier] until I find someone else."

32.    Recognizing that his statement that Mr. Fortier was "not coming in" any longer could not be proven, Defendants' manager instead claimed that in light of an

unrelated altercation between Mr. Fortier and his roommate that occurred the week before, Mr. Fortier "shouldn't continue to work with us anymore."

33.    Mr. Fortier is informed and believes that the manager's statement as to the reason Defendants fired Mr. Fortier was not true, but offered as a pretext to justify terminating Mr. Fortier for seeking to exercise his rights under Federal and State law.

34.    Thus, even though another Duchess Norwalk employee was involved in the same altercation as Mr. Fortier (and had been arrested and criminally charged), Duchess Norwalk did not terminate that employee and, upon information and belief, that employee continues to work for Defendants.

35.    After Defendants unlawfully terminated Mr. Fortier on or about October 3, 2023, Defendants failed to pay Mr. Fortier all wages due and failed to pay Mr. Fortier on the next business day as required by C.G.S. §31-71c.

36.    After Defendants unlawfully terminated Mr. Fortier on or about October 3, 2023, Defendants failed to provide Mr. Fortier with Form UC-61 (the so-called "Pink Slip") as required by Connecticut law.

**First Cause of Action – Failure to Pay Overtime Under Federal Law**

37.     Mr. Fortier incorporates by reference paragraphs 1 through 36 as if set forth in full.

38.     By failing to include the hours Mr. Fortier worked as a cleaner when it calculated his overtime hours, Defendants failed to pay overtime wages for all hours worked in violation of 29. U.S.C. §207(a).

39.     By failing to include the hourly rate Mr. Fortier earned when performing cleaning duties ($19.04 per hour) when it calculated his overtime rate and hours, Defendants failed to pay overtime wages "at a rate not less than one and one-half times the regular rate at which he is employed" in violation of 29 U.S.C §207(a).

40.     By failing to pay Mr. Fortier for all wages due as required by law, Mr. Fortier has been damaged in an amount to be determined at trial.

41.     Under 29 U.C.S. 216(b), by failing to pay Mr. Fortier for all hours worked over 40 hours per week at time and one-half his regular rate of pay, Mr. Fortier is entitled to an award of liquidated damages and his reasonable costs and attorneys' fees incurred in bringing this action.

**Second Cause of Action – Failure to Pay Overtime Under State Law**

42.     Mr. Fortier incorporates by reference paragraphs 1 through 41 as if set forth in full.

43.     By failing to include the hours Mr. Fortier worked as a cleaner when it calculated his overtime hours, Defendants failed to pay overtime wages for all hours worked in violation of CGS §31-76(b).

44.     By failing to include the hourly rate Mr. Fortier earned ($19.04 per hour) when it calculated his overtime rate and hours, Defendants failed to pay overtime wages "at a rate not less than one and one-half times the regular rate at which he is employed" in violation of CGS §31-76(b) and (c).

45.     By failing to remit overtime wages due on a weekly basis on a regular pay date, Defendants violated CGS §31-71b(a).

46.     By failing to pay Mr. Fortier all wages due on the next business day succeeding his termination, Defendants violated CGS §31-71c(b)

47.     Under CGS §31-72, by failing to pay Mr. Fortier for all hours worked over 40 hours per week at time and one-half his regular rate of pay, and by failing to pay Mr. Fortier within the time limits required by CGS §31-72, Mr. Fortier is entitled to recover liquidated damages equal to 100% of the amount owed, plus costs and reasonable attorneys' fees incurred in bringing this action.

### Third Cause of Action –
### Retaliation under the Fair Labor Standards Act, U.S.C. §215(a)(3)

48.     Mr. Fortier incorporates by reference paragraphs 1 through 47 as if set forth in full.

49.     By questioning his manager about whether he was eligible to be paid overtime and asking for copies of his pay records 2023, Mr. Fortier had made an effective internal complaint under the Fair Labor Standards Act that he was not being properly paid. As such, Mr. Fortier engaged in activity protected by 29 U.S.C. §215(a)(3).

50.     When Defendants terminated Mr. Fortier in September 2023, Mr. Fortier's informal internal complaint about pay treatment was one of the motivating reasons for his termination. But for Mr. Fortier's protected conduct, Defendants would not have terminated his employment.

51.     By terminating Mr. Fortier for his informal internal complaint, Defendants unlawful retaliated against Mr. Fortier in violation of 29 U.S.C. §215(a)(3) and are liable under 29 U.S.C. 216(b) for "such legal and equitable relief as may be appropriate . . . including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

### Fourth Cause of Action –
### Individual Liability for Failure to Pay Wages

52.     Mr. Fortier incorporates by reference paragraphs 1 through 51 as if set forth in full.

53.     Upon information and belief formed after diligent inquiry, Defendants Berkowitz, Lavin, Doe and Roe are personally liable for the failure to pay wages to the extent each and all of them were responsible for setting employee hours or paying

wages.  *Butler ex rel. Skidmore v. Hartford Tech. Inst.*, 243 Conn. 454, 704 A.2d 222 (1997);

*Allanach v. Intergrateed Techs, Inc.,* 2004 Conn. Super. LEXIS   1560 (CT Super. CT, June

15, 2004); *State v. Nanowski*, 56 Conn. App. 649, 746 A.2d 177, 2000 Conn. App. LEXIS 59

(Conn. App. Ct. 2000); and *Petronella ex rel. Maiorano v. Venture Partners*, 1998 Conn.

Super. LEXIS 2278 (Sup. Ct. 1998).

**First Unasserted but Stated Cause of Action –
Retaliation for Seeking a Sick Day Under State Law**

54.   Mr. Fortier incorporates by reference paragraphs 1 through 53 as if set

forth in full.

55.   Because Duchess Worldwide, Duchess Norwalk, and the other 11 Duchess

restaurants constitute a single business enterprise, a single employer, a joint employer

and/or alter egos, Defendants employed more than 50 employees in the State of

Connecticut and were obligated to provide its employees with up to 40 hours of paid sick

leave each year.  Defendants unlawfully failed to provide its employees with paid sick

leave, however, in violation of Connecticut law.

56.   By threatening to reduce Mr. Fortier 's hours because he sought to take a

sick day in 2023, Defendants unlawfully retaliated against Mr. Fortier for seeking to

exercise his rights under the Connecticut Earned Sick Time Act, CGS §31-57r *et seq.*

57.     Mr. Fortier has contemporaneously with the filing of this Action filed a claim of retaliation with the Connecticut Department of Labor and by this pleading reserves the right to litigate that claim before that agency.

### Second Unasserted but Stated Cause of Action –
### Retaliation for Seeking a Day of Rest

58.     Mr. Fortier incorporates by reference paragraphs 1 through 57 as if set forth in full.

59.     Connecticut law prohibits employers from requiring employees to work more than six consecutive days in any work week.  *See* CGS §53-303e(a).

60.     By terminating Mr. Fortier in whole or in part because he sought to take a single day off after having worked for an excessive period without a day of rest, Defendants unlawfully retaliated against Mr. Fortier for exercising his rights under CGS §53-303e(a)

61.     Mr. Fortier has contemporaneously with the filing of this Action filed a claim of retaliation with the Connecticut State Board of Mediation and Arbitration and by this pleading reserves the right to litigate that claim before that agency.

### PRAYER FOR RELIEF

62.     Mr. Fortier incorporates by reference paragraphs 1 through 61 as if set forth in full.

63.     For the reasons set forth above, Mr. Fortier seeks:

a. A declaration that Duchess Worldwide, Duchess Norwalk, and the other 11 Duchess restaurants constitute a single business enterprise, a single employer, a joint employer and/or alter egos, and are jointly and severally liable for the damages and debts of each other;

b. A declaration that Defendant Berkowitz, Defendant Lavin, Defendant Doe and Defendant Roe are liable for the Defendants' failure to pay wages because they each individually were responsible for the payment of wages to employees or the setting of the employees' work hours;

c. Damages for failure to pay overtime for all hours worked in excess of 40 hours per week at his properly calculated regular rate of pay, in an amount to be determined at trial;

d. Liquidated damages for failure to pay for all hours worked at his properly calculated regular rate of pay, in an amount to be determined at trial;

e. Statutory damages equal to 100% of his owed wages and liquidated damages for the failure to pay all wages due within the period specified by Connecticut law;

f. Back pay as a result of Mr. Fortier's unlawful termination pursuant to 29 U.S.C. §216(b);

g. Liquidated damages in an amount equal to back pay, pursuant to 29 U.S.C. §216(b);

h. Reinstatement to his former position at Duchess Norwalk or front pay in an amount to be determined by the Court;

i. Prejudgment interest in an amount to be determined by the Court;

j. Post-judgment interest based on Defendants' failure to pay all sums owed;

k. Costs and a reasonable attorneys' fees as provided by Connecticut and Federal law;

l. Such other and further relief as justice and equity require.

## JURY DEMAND

64. Mr. Fortier demands a trial by jury.


Respectfully submitted,


**THE LAW OFFICE OF MATTHEW T. MIKLAVE,** PLLC


_____                January 29, 2024
Matthew T. Miklave (Bar No: ct28261)
Attorney-at-Law
Matt@Miklavelaw.com

2 Park Avenue                                           2 Belden Avenue
Suite 2018                                              P.O. Box 2094
New York, New York  10016                               Norwalk, Connecticut  06852
(212) 419-0551                                          (203) 434-4093